And we'll hear argument in the final argued matter on today's calendar. Ryniker v. Sumick, Textile Company, limited case number 24-2090. Mr. Weingarten. Good morning, Your Honor, and may it please the Court, my name is Noah Weingarten and we represent Bryan Ryniker as the Litigation Administrator of the Post-Confirmation Invasive Decor Holdings, Inc. et al. We're here today on appeal to seek reinstatement of the Bankruptcy Court's initial judgment that was entered in favor of the Litigation Administrator and against Defendant Sumick, Textile Company, limited by default. And we are seeking the reversal of the District Court's—reversal and remand of the Bankruptcy Court's judgment for several reasons. And before I get into the merits, I just want to point out the sole issue here is whether there was sufficient service across it. That's the key issue. And it's whether there was sufficient service to establish personal jurisdiction over Sumick at the time that the Bankruptcy Court entered the initial judgment. We submit that the answer should be yes, there was sufficient service. And what I want to do is point out that the standard here is fairly deferential to the Bankruptcy Court. The United States Supreme Court in Espinoza held that in order to void a judgment under Federal Rule 60b-4, which is one of the rules that my colleague relied upon, that requires exceptional circumstances, and that a judgment should only be void when the court that rendered a judgment lacked, quote, even an arguable basis for jurisdiction, end quote. There isn't just an arguable basis for jurisdiction here. There is jurisdiction here. And so all that we have defined is that there is arguable jurisdiction and the initial judgment should be reinstated. That's our position. It's important when you're looking at this analysis to see what did the litigation administrators see at the time the service of process was effectuated. There was a proof of claim submitted under penalty of perjury that listed Sumick as the creditor. It was signed by a lawyer. His name was Don Leviton. The proof of claim attached several documents. It attached a collection trustee that vested authority to collect on Sumick's debt from Sumick to its agent, Sina Shore. And then there's another document called the trustee and letter of direction, which vested authority from the agent, Sina Shore, in B&J. And so those documents put together gave B&J the authority to file the proof of claim on Sumick's behalf. And because the proof of claim was authorized, it means that the litigation administrator had the authority to serve the summons and complaint at the notice. Where is the authority for that under the bankruptcy rules? For which point, Your Honor? For the proposition, as I understand it, you're making, that merely by being an agent for purposes of filing a proof of claim, you're also authorized to receive service of process in an adversary proceeding. Where is the language to which you point for that or the authority? So there's two pieces to that, Your Honor. The first piece is that B&J, by virtue of being oppressed to collect the debt, it had to file a proof of claim because it was necessary and incidental to its authority. And for that point, we cite the several cases in our papers. We cite the CBSE, Stokely, Van Camp, and the Village and Island Park case. And we also cite... Okay. The fact that it had to do anything doesn't answer my question, which is, why is that by itself? Well, really, where is the authority for it to conclude or for concluding that that by itself is enough to demonstrate that it's also authorized to receive service of process in an adversary proceeding? So the authority, Your Honor, there's a well-established line of cases called take-out. Take-out was a case... It's not in the Bankruptcy Code or the Bankruptcy Rules. It's really a case law that establishes that, that the noticing agent listed in the proof of claim is authorized to receive service of process. And so for that, we cite the take-out case. We cite the in-ring misinterpret. And we cite another case called Outlet. And I can give you, Your Honor, the cites in our brief. We cited that extensively in our opening brief at pages 40 through 43. And those cases, they expressly... In take-out, the court said that an agent listed as a noticing agent on a proof of claim means that the agent is, quote, explicitly appointed as the creditor's authorized agent for service of process. End quote. And so as a result of B&J having the authority to file the claim, it was then authorized to accept service of process on Sumex's behalf. The Bankruptcy Court correctly concluded that those two documents that were appended to the proof of claim, they were the manifest authorization or the manifestation of authorization from Sumex to file the proof of claim and to collect the debt. Now, the District Court on Appeal, the Bankruptcy Court, it concluded that there was no actual authority and that there was no apparent authority. And we submit that that was error and that B&J, in fact, had both forms of authority. On the actual authority point, B&J had that actual authority for two reasons. First, as I just said, there was a direct manifestation from Sumex to sign a short and then sign a short to B&J. The second thing, as I just alluded to with Your Honor, Judge Lohear, is that filing the proof of claim is fundamental to collecting on the debt. We cited cases in our opening brief that found that collecting on a debt, there is no other way to collect on a debt against a bankruptcy debtor other than by filing a proof of claim. If you do not file a proof of claim, then there's no other way to collect that because you'd be in violation of the Bankruptcy Automatic Statute under 11 U.S.C. 362. So there is a difference between suing and being sued. Yes, Your Honor, that is true. And so Sumex, the proof of claim that was submitted in Sumex's name, which I know my colleague would challenge, and it was authorized, that it submits you to the personal jurisdiction of the bankruptcy court when you do submit a proof of claim. We cite the Hong Kong Savings Bank case that says when you submit a proof of claim, that means that you're now subject to the personal jurisdiction of the bankruptcy court. And so there are cases, the takeout case is very helpful in that regard. Because there, it's a case that's on nearly all fours with this case. Are there any cases above the bankruptcy or district court level that say that? I'm sorry, I didn't hear you, Your Honor. Are there any cases above the district court level and the bankruptcy court level that say that? Takeout's a bankruptcy case. Yes, Your Honor. That, we have been unable to find a case that says that. And that's one of the reasons why we think it's important for this court to provide a clear precedent on that point. We think that this case, it's a bankruptcy appeal, but a decision by this court is important and would have broad-ranging ramifications beyond just the two parties here. There are several policy reasons I wanted to focus the court on for why there needs to be a correction here, respectfully, of the district court. The first is that, as Your Honor just alluded to, there is no circuit-level decision in that that affirms what the other courts have said repeatedly, that by filing a proof of claim, the noticing agent is authorized to serve as a process. That is something that— Are there any exceptions in your view to this rule? Because that's a very broad rule. So as soon as an agent, an authorized agent, files a proof of claim, that automatically, without exception, I think is what you're saying, means that the same agent is authorized or has got to accept service of process as an agent for that purpose. Is there an exception to that? Because the district court talked about attorney, non-attorney, and so on, but are there exceptions that you'd be prepared to acknowledge? I would be. I just can't think of them at the moment. The issue is that the district court did create exceptions to that rule. We just disagree with them because we believe that they're inconsistent with Rule 7004, the service statute, which allows for service on non-lawyers, such as agents and whatnot. And so by limiting the agent in the— So, for example, and I don't know enough about proofs of claim, thankfully, perhaps, but can an agent—and we've got the proof of claim here in the record—but can an agent or whoever who files a proof of claim say, this is filed and it is limited, my agency or our agency is limited for purposes of just filing this proof of claim and for no other purpose? Can you say that? Yes, Your Honor. I believe you could say that. The only caveat is that that would not ignite a creditor who filed a proof of claim from the personal jurisdiction of the bankruptcy court, which I recognize is a different issue. It's a different case, but you could say that just to, for example, protect your—well, for the principal to protect itself from service of process to that agent. Yes, Your Honor. Is that fair? That's a very fair—that's a very fair exception. And I just want to point out one thing, which is, in the record, we do have statements by SUMAC who did acknowledge that they knew that Sina Shore was going to file a proof of claim.  And they did—SUMAC did nothing to do what you just said, Your Honor, which is to carve out a burden. Oh, I understand. I understand. So the second question I've got relates to, I think, the district court's decision with respect to setting aside the entry of default for good cause on the ground that SUMAC's action was not willful. What is your—just very briefly, what's your position as to that? Because you mentioned we should vacate the bankruptcy court's decision. What should we do with respect to the district court's decision? So the district court—well, you should vacate the district court's decision. But on the willful point that you're asking me about, we think that it was willful. The subagent is a person—so we served the complaint on the actual person, Mr. Leviton, who is a lawyer. That is impugned. He's a subagent of SUMAC. And so you have to accept our position that if that BHA wasn't back the subagent they were—it is absolutely a willful default. Was there any evidence that SUMAC was even notified or was even aware of the adversary proceeding? So there is many emails in the record between the litigation administrator's counsel and Peter Gelbis. Who is not with SUMAC. He's with BHA, correct? That's correct. Except there are numerous examples in the record where he says things like, I am in touch with SUMAC. SUMAC has asked that I reach out and clarify if there is a settlement offer. And so we had no reason to think otherwise when we had served the complaints and when we were litigating with SUMAC. At the time, all we had was this proof of plan. I mean, usually when we have a district court that says—that determines a willfulness issue, that's very hard to undo. But, okay, thank you. You reserve some time for rebuttal so you can rebut me then. Mr. Rosner. Good morning, Your Honors. For the record, Fred Rosner of the Rosner Law Group for the appellee SUMAC Textile Company. The district court correctly found that SUMAC was denied its right in process to defend against the litigation administrator's complaint. SUMAC was a known predator. Appellant knew SUMAC's proper service address in China. Appellant also had valid email addresses for SUMAC representatives in China. But appellant at no point made any attempt to serve or even provide bare notice of a lawsuit against SUMAC in China. The district court correctly found that SUMAC never communicated with either B&J or appellant before entry of the full judgment. That finding is supported by the sworn declaration of Yong Gu, who is a senior manager at SUMAC. And also there's an email exchange between Mr. Gildas, who was introduced in appellant's opening remarks, to Yong Gu. And this is well after entry of the full judgment, where Mr. Gu says to Mr. Gildas, SUMAC has never been served with any legal document. So, Mr. Wasserman, I appreciate the argument very much. But I think you would agree that we recognize the concept of sub-agency. And the idea here, as I understand it, is that B&J is a sub-agent of SUMAC through SANSUR. So could you address that? Yes, I would push back against that. The only document... So you've got eight minutes to rebut that. Okay. The only document that SUMAC signed in this case was the collection trust deed. So the issue before the court is whether in that trust deed SUMAC appointed SANSUR, its insurer, to accept service process for SUMAC. And the answer must be no, because the district court found that for such types of agencies, the appointment must be expressed. SUMAC never communicated with B&J, ever. There was no manifestation of conduct between SUMAC and B&J. It was not acting as a sub-agent, and it set forth... Let me go back to your first point, because now you're raising a question as to SANSUR's... Am I pronouncing that correctly? SANSUR's agency relationship with SUMAC and the scope of that agency relationship. Have I understood that? Is that what you're doing? Yes. And we just collect a debt. And in the group declaration... Full power. We grant you full power and give you any assistance you may reasonably require of us in the exercise of such rights and remedies in our or your name. That's one of the agreements. There's another agreement that gives SANSUR the authority to file the claim. Do you agree with that? Yes, subject to an explanation. As made clear in the group declaration, SUMAC never sought to collect a claim for the bankruptcy estate. It had the benefit of insurance. It was not seeking a double recovery. It just wanted its insurance claim paid by SANSUR. Now, in connection with that, SUMAC did have an understanding that SANSUR, as insured, had the right to mitigate whatever payment it made on the insurance to SUMAC. And that is the connection between SANSUR and B&J. SANSUR is hiring B&J without SUMAC's knowledge. We do not know about the contents of the proof of claim, how it was filled out. The collection trust deed says it's an agreement and authorization to SANSUR of a full rights-free collection on SUMAC's behalf against the debtors. Yeah, that's a translated document. Well, all I've got is the English translation, sir. Did I read that correctly? I'm sure you did. Okay. So, just to answer your question, regardless if SUMAC conveyed that authority to SANSUR, it's insured. SANSUR did not convey that to B&J. SANSUR did not grant B&J the right to use SUMAC's name in seeking collection of the debt. So, if I were looking at the proof of claim and the attachments to determine B&J's power and authority, the first thing I would observe is that B&J signed the proof of claim as legal counsel – legal counsel to SUMAC. And that conflicts with the certificate of service filed by the planning administrator's attorneys with the bankruptcy court, who claim they served it on, dominant on defendants' counsel. So, there's a disconnect there between what they're looking at and what they're representing to the bankers. Once SANSUR paid the claim, or paid most of it, it was segregated to the rights of SUMAC. So, when it acted to collect in the bankruptcy court, it was standing in the shoes of SUMAC, correct? That's correct. So, they could act for SUMAC. In fact, the terms of insurance contract would say that the insurance company can, once it pays a claim, act on behalf of SUMAC. And then it appointed B&J to appear for SANSUR representing the interests of SUMAC, or rather, standing to collect on behalf of SUMAC, correct? Incorrect. Let me explain why. In the segregation arrangements, the insurer has the right to use the insurer's name to avoid a books and records objection from the litigation administrator. I've never heard of SANSUR before, but you get to use the name of the insurer to collect. That does not mean they're collecting for SUMAC's economic benefit, which would make no sense because they paid them the insurance. Well, no, they are collecting for its economic benefit. The insurance company has already provided the economic benefit to SUMAC, and now it's appearing in the shoes of SUMAC to collect money that would be owed to SUMAC. After the insurance, I don't think SUMAC would have any. Well, if you're standing in somebody else's shoes and somebody owes them money, then you're—I don't know how to explain it the other way. You're in their shoes. That's a very intimate relationship. They have the contractual right to use their name, but that doesn't mean the money is going to go. SUMAC's not going to get doubled or cut. That's correct. Right. So they have the right, and regardless, even if they had the right, let's assume, you know, these are debated, that does not equate to being empowered to accept service of process for SUMAC. That is not the standard I'm asking this Court to adopt. That would be a very dangerous precedent for a number of reasons. Well, surely the question is not yes or no, is it true or not. The question is whether the Court had arguable jurisdiction where, you know, you can argue it, but the more you argue it, you may be arguing that it's arguable. You have to establish personal jurisdiction through Rule 4. Rule 4 is unique. It governs initiation of a complaint, and you're suing somebody. So with the bankruptcy code, the way to serve is fairly lenient. You have the benefit of nationwide service of complaints. But it has to be addressed in a very particular way. So if we accepted the concept that by filing a proof of claim, you're accepting service of process, that would lead to – that would render superfluous behavior prevention. If you want to get personal jurisdiction over foreign creditors all over the world, just set a bargain. They filed a proof of claim, you got them. I suggest that Rule 4 requires more diligence, and it's – proof of claim, the case law says that – in the form it says where should notices be sent. Well, an adversary receiving is not a notice. It seeks permanent recovery. Here's $700,000 from somebody. It's not a notice. So one of the policy reasons that you might want to embrace the rule that your friend on the other side has asked us to embrace is efficiency, administrative ease, particularly in bankruptcy cases where things need to move, as I understand it, quite quickly. Why is that rule inconsistent with this policy advantage in the bankruptcy context? First, there is that concept in Rule 5. Rule 4 governs the initiation of a complaint. Rule 5 expressly allows service at a creditor's last known address, which would be the proof of claim. So that's okay except for a Rule 4 plea. The other – so it also reduces Rule 4 to an estoppel argument, which is simply a case of what that concept outlines, that you put in the proof of claim, you're bound to it. That lowers the burden substantially of what's in Rule 4 now, that you cannot put, in this case, the proof of claim, the address or the appeal box. You can't serve a complaint at appeal box. So it will reduce the due process qualities that are inherent. Well, no. So in the same way – and I'm just going to ask you about that in the same way that I asked Mr. – your friend on the other side. There might be exceptions, right? So maybe what you're pointing out is an exception to the rule that we're being asked to embrace. So if there's an appeal box, maybe that's an impediment to service. There may be other impediments or reasons why we would not say that someone, just by virtue of the fact that they filed a proof of claim, that an agent is thereby also opening itself up or its high end up or its principal up to service a process. I don't think there would be exceptions. In the context, grand financier, language conference, Supreme Court cases, they're right-to-jury trial cases. So if I was suing somebody for breach of contract for a million dollars and I have a 7th Amendment right to a jury trial and that entity filed for bankruptcy and I wanted to collect on my million dollars, I would have to file a proof of claim under compulsion of court order. The Supreme Court of the United States says that has legal consequences. By doing that, you've submitted yourself to the equitable jurisdiction of the Bankruptcy Court for the claims allowance disallowance process. No more right to jury trial. So if you take that concept and people file – I filed proof of claim all the time with disclaimers in it. I filed it as proof of claim. You lose because the Supreme Court's already ruled on it. So a legal right – Even a disclaimer as to your authorization as a subagent or an agent to receive service of process in the context of an adversary proceeding. Is that what you're saying? Well, I don't know about that. I don't think there's a case rule about that. Well, that's this case. Well, we don't concede that. Thank you very much. Thank you very much. Judge Jacobs, I just wanted to address the point about the subrogation agreement that you had raised. I think it's important to realize the ordering of facts. At the time that the proof of claim was filed, Sumit was the creditor. The signature was not yet subrogated into Sumit's position. The proof of claim was filed on April 16, 2019. That's at Appendix 144. The subrogation agreement wasn't yet signed. It was signed in October 18, 2019, six months later. So at the time the proof of claim was filed, B&J was acting on behalf of the principal at that time, which was still Sumit. Though we think that the subrogation agreement is a side issue to this appeal because, as we had stated in our papers, the litigation administrator had no idea that the subrogation agreement even existed until way after service of process had already been effectuated. And so, at the very minimum, B&J had parent authority to act on behalf of the creditor that was listed in the proof of claim. And that apparent agency was not destroyed at the time service of process was effectuated. Now, Judge Laguerre, I wanted to rebut your point about willfulness. As I was trying to do before my opening remarks, the GU declaration that my colleague referred to, it never says the basic point. We had no idea about the adversary proceeding. It had a very artful language to try to mask that point. And as we say, they could have said whatever they wanted, and they don't say that very basic point. Another element to vacate the default judgment is that they had to show complete defenses to our claims. That's in Bricklayers, and that's also in McNulty, SEC v. McNulty. And we raised that point. The absence of willfulness is enough, though, right, to vacate a default judgment? Absolutely. And that seems to me to be a finding by the district court. It's a little difficult for us to dislodge it, but you've made your argument. But the district court, Your Honor, is an appellate court. I understand it. So it's not really in a position to find, but, you know, it's – I have a hard time maybe for the reasons mentioned by your friend, Mr. Rosner, seeing how this is a willful violation of anything. Right, but they have to establish all three elements in order to vacate. And so even if you find that there is no willfulness, they still have to show meritorious defenses. You can't vacate a judgment if there are no meritorious defenses. Maybe I misunderstood. Thank you very much. Without a doubt. Thank you very much. We'll reserve the decision, and that concludes today's hearing.